UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MANGLESHWAR MATHUR, | ) 1:10CV0121 |
| Plaintiff, | ) JUDGE CHRISTOPHER BOYKO |
| | ) (Magistrate Judge Kenneth S. McHargh) |
| v. | ) |
| MERIAM PROCESS TECH., | ) |
| Defendant | ) REPORT AND |
| | ) <u>RECOMMENDATION</u> |

McHARGH, MAG. J.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Meriam Process Technologies ("Meriam") filed this Motion for Summary Judgment, pursuant to Fed. R Civ. P 56, in response to the Complaint filed by Plaintiff Mangleshwar D. Mathur ("Mathur").

Mathur was terminated from his job as a software developer for Meriam on January 28, 2009. (Doc. 1, Exhibit A at 2). Mathur, who had emigrated from India, was 69 years old at the time. (Id.) Mathur filed a Complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that he was terminated due to his nationality and age. (Doc. 11 at 1). The EEOC investigated pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., and Title VII, 42 U.S.C. § 2000(e), et seq. (Id. at 2). The EEOC investigated the claim and dismissed the complaint, informing Mathur of his right to file suit in

1

court. (Id. at 2)

On December 8, 2009, Mathur filed suit in the Cuyahoga County Court of Common Pleas. (Doc. 1 at 1). In his Complaint, Mathur alleged that Meriam had wrongfully terminated him due to his age and nationality, violating the ADEA and Title VII (Id., Exhibit A at 1). Mathur also claimed that he had a cause of action for intentional infliction of emotional distress resulting in "mental anguish and humiliation, a loss of self esteem, and depression." (Id.) Finally, Mathur requested that the Court assess punitive damages against Meriam. (Id., Exhibit A at 3)

On January 19, 2010, Meriam filed a successful Notice of Removal to United States District Court for the Northern District of Ohio. (Doc. 1). The proceeding came before this Court where, on June 19, 2010, Meriam filed a Motion to Dismiss Mathur's emotional distress claims. (Doc. 8). This Motion was granted on August 11, 2010. (Id.). Subsequent to that, on December 22, 2011, Meriam filed a Motion for Summary Judgment. (Doc. 41). On January 20, 2012, Mathur filed a Reply in Opposition to the Motion for Summary Judgment. (Doc. 42). On February 6, Meriam filed a Reply to Mathur's Motion for Summary Judgment (Doc. 45).

## **BASIS FOR SUMMARY JUDGMENT**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is only appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. In the present case, Meriam has made several arguments as to why they are entitled to summary judgment.

First, Meriam contends that Mathur was fired for economic reasons, namely a 25% reduction in the workforce ("RIF"). (Doc. 41 at 8). According to Meriam, the sole factual basis

for Mathur's complaint is that he was let go while a 33 year old white co-worker, Jeremy Kellner ("Kellner") was retained. (Id.) However, Meriam argues that it had a legitimate reason for its actions. Meriam claims that both Kellner and Mathur were subject to a performance evaluation to determine whether they would be retained during the RIF. (Id.) They alleged that Kellner got a higher score on the performance evaluation form and thus was retained when Mathur was let go. (Id.) Furthermore, Kellner was Lead Developer on an ongoing project and thus more valuable to the company. (Id. at 11).

Meriam also contends that Mathur has no direct evidence of discrimination and can only rely on circumstantial evidence. (Doc. 41 at 8). Thus, Meriam alleges, the burden shifting formula, first articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct 1817 (1973), for proving ADEA and Title VII discrimination claims will apply in this case. (Id.). Meriam claims that Mathur can not make out a *prima facie* case of discrimination under the McDonnell Douglas formula. (Id.). Additionally, Mathur's claim that his supervisor, Thomas Davis ("Davis"), made derogatory statements to him is irrelevant even if it could be proven as Davis had nothing to do with the decision to terminate Mathur. (Id. at 19, 21). Rather, that decision was made by the head of the engineering department, Scott Walker ("Walker). (Id.).

Finally, Meriam claims that even if Mathur could make out a *prima facie* case of discrimination, the McDonnell Douglas formula still requires him to prove that Meriam's alleged legitimate reason for firing him was a pretext, a requirement which he has not satisfied. (Id.).

## **STANDARD FOR SUMMARY JUDGMENT**

As stated above, Federal Rule of Civil Procedure 56(a) requires that summary judgment can only be granted when there is "no genuine issue of material fact" and the moving party is

entitled to "judgment as a matter of law." However, "a genuine issue of material fact" does not exist simply because both parties dispute the facts of the case. Instead, "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, ---- or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." (Fed. R. Civ. P. 56 (c)(1)). "The existence of a mere scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party." Das .v Ohio State University, 115 F.Supp.2d 885, 889 (S.D. Ohio 2000), aff'd. 57 Fed Appx. 675 (6th Cir. 2003), citing Anderson v. Liberty Lobby, Inc., 477 US 242, 106 S.Ct. 2505, 252 (1986) and Copeland v. Machulis, 57 F.3d 476, 479 (6th Cir.1995).

## FACTS

In this case, Mathur does not dispute that Meriam instituted a RIF in January, 2009. (Doc. 42 at 1). He does however dispute the fairness of his selection for the RIF. According to Plaintiff, the sole reason he was selected for the RIF was because of he was older (age 69) and of Indian origin. (Id;  Doc. 41 at 9).

Mathur alleges that he was the target of discriminatory behavior before his termination. According to Mathur, when he first arrived, his immediate superior, Thomas Davis ("Davis"), made disparaging comments about the work performed by an Indian company, Honeywell Automation India Limited ("HAIL"), which had a software development contract with Meriam (Doc. 41 at 21 ). Mathur claims that Davis made derogatory comments regarding Indian workers (Id.).  Mathur further claims that one month before his termination, Davis asked him if he was

considering retirement (Id. at 17). During this encounter, Davis also allegedly asked Mathur if he was drawing social security benefits. (Id.)

Mathur firmly disputes the reasons given for firing him and retaining Kellner. Neither party disputes that Mathur had seniority over Kellner. (Doc. 41 at 11, Doc.7 ¶ 2). However, Mathur claims that he had more experience and was more qualified then Kellner was and should have been retained at Meriam for that reason. (Doc. 42 at 6). Plaintiff also contends that Kellner's scores on the RIF evaluation were deliberately skewed, so as to make Kellner score higher then he should have. (Doc. 42 at 2). Plaintiff contends that Kellner was not the Lead Developer on an important ongoing project at the time of his termination (Id. at 6)

Finally, Mathur disputes the assertion that Davis was not involved with the decision to terminate his employment. (Doc. 42 at 3). He argues that Walker prepared the RIF evaluation based on recommendations from Davis. (Id.) Furthermore, Mathur claims that the human resource manager, Benita DuBrueil ("DuBrueil"), informed him personally that it was Davis who made the decision to terminate him. (Id. at 4).

## ANALYSIS

Meriam will prevail on their motion for Summary Judgment if there are "no genuine issues of material fact" and they are entitled to judgment as a matter of law. (Fed. R. Civ. P. 56). The Defendant's arguments against Mathur's discrimination claims come down to several points: 1) Mathur can not make a *prima facie* case for ADEA or Title VII discrimination, 2) even if Mathur could make out a *prima facie* case for discrimination, Meriam had a legitimate reason for terminating him, and 3) Mathur can not prove that Meriam's legitimate reason for terminating him is pretextual. They further contend that they are entitled to summary judgment on Mathur's

claim for punitive damages as Mathur can not prove by a preponderance of the evidence that Meriam "'engaged in a discriminatory practice' – with malice or with reckless indifference to the federally protected rights of an aggrieved individual." Parker v. General Extrusions Inc., 491 F.3rd 596, 602 (6th Cir. 2007), quoting 42 U.S.C. § 1981a(b)(1).

Although these arguments are all convincing, the case turns on only one. Mathur is unable to make the *prima facie* case necessary to show wrongful termination under the ADEA and Title VII.

### Prima Facie Case for Title VII and ADEA Claims

#### A. Direct Evidence

Both the ADEA and Title VII are extremely similar. The ADEA says that an employer may not "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.§ 623 (a)(1)). Title VII states that an employer "can not fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 29 U.S.C § 2000e-2 (a)(1). Mathur's Title VII claim is based on "national origin" discrimination, alleging that he was discriminated against because he was from India. (Doc. 7 ¶ 1).

Under the relevant case law, to make his *prima facie* case for Title VII or ADEA discrimination, Mathur must prove that he was the victim of discrimination by either direct or indirect evidence. Geiger v. Tower Automotive, 579 F.3d 614, 620 (6th Cir. 2009); Younis v. Pinnacle Airlines, 610 F.3d 359, 363 (6th Cir. 2010). Direct evidence is evidence that "if believed,

6

requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 570 (6th Cir. 2003) quoting Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir.1999). See also Das, 115 F.Supp.2d at 889. Direct evidence exists where an "employer's statement shows discriminatory motive." Id.

Meriam argues that "direct evidence in the form of verbal comments will be similar to an employer telling its employee that 'I fired you because you are disabled.'" Id., quoting Smith v. Chrysler Corp., 155 F.3rd 799, 805 (6th Cir. 1998).  However, as Das indicates, a more expansive test applies for the analysis of discriminatory statements.  "In analyzing discriminatory comments, factors to consider include whether a decision maker or an agent made the comment, whether the comment was related to the decision-making process, and whether the comment and the discriminatory act were close in time." Id. at 889-90.

Under this analysis, Mathur still does not present direct evidence of discrimination. The only statements which could create any direct evidence of discrimination on the part of Meriam are the statements made by Davis.  There is no direct evidence that Mathur was discriminated against on the basis of age. All Davis did was inquire about whether Mathur planned to retire and whether he was drawing social security benefits. (Doc. 7 ¶5) There could be legitimate reasons that David inquired about plaintiff's retirement plans. Davis could have asked these questions because he held bias against the plaintiff due to his age.  However, Davis also could have been concerned that Mathur intended to retire soon and merely desired to know how that would affect ongoing projects. He also could have asked out of simple curiosity.  Thus, Davis' questions are not evidence that "if believed, requires the conclusion that unlawful discrimination was at least a

motivating factor in the employer's actions." Wexler, 317 F.3d at 570 quoting Jacklyn, 176 F.3d at 926.

In analyzing direct evidence, courts in the Sixth Circuit can apply the same actor inference. Id. at 571 -72. The same actor inference means that when "where the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." Id. at 572, quoting Buhrmaster v. Overnite Transp. Co., 61 F.3d 461, 463 (6th Cir.1995). However, application of the same actor inference is not mandatory in the Sixth Circuit and, even when applied, the inference can be overcome by other evidence of discrimination. Id. at 573.

There is some dispute about whether or not the same actor inference applies to the case at hand. Meriam contends that it was Davis who hired Mathur in the first place. (Doc. 41 at 14). They contend that, if this court accepts Mathur's allegations that Davis made the decision to terminate him, the same-actor inference will apply. (Id.). Mathur, on the other hand, contends that it was another Meriam employee, Ray Molnar, who made the decision to hire him. (Doc. 42 at 5, Exhibit A at 3). However, the evidence on the record shows that Davis, at the very least, recommended Mathur for his position at Meriam. (Doc. 40-1 at 83). However, even assuming that the same-actor inference does not apply in the case, Mathur still fails to provide any direct evidence of discrimination.

The other evidence Mathur provides are the remarks Davis allegedly made about Indian workers. Assuming that Davis had a bias against Indians, his comments still do not constitute direct evidence under the factors articulated in Das. 115 F. Supp. 2d at 889. One factor is

8

"whether a decision maker or an agent made the comment." Id. Merriam's evidence indicates that the decision was made by Scott Walker, the Head of the Engineering Department. The only evidence in the record that Davis had anything to do with the decision to terminate Mathur is the statement allegedly made by the human resources manager, DuBrueil. (Doc. 42 at 4). However, other than Mathur's own statement, there is no other evidence in the record that DuBrueil ever made this statement. Although one could infer that Davis was involved in the decision, any statement that requires the inference of a fact does not constitute direct evidence. Das, 115 F. Supp. 2d at 889.

Another factor which must be considered is "whether the comment and discriminatory act were close in time." Id. However, in this case the record is unclear as to when the comments were made in relation to the decision to terminate Mathur.

The last factor to be considered, under Das, is whether the comment influenced the decision making process. 115 F. Supp. 2d at 889. The reference in the record that indicates that Davis, who allegedly made the statements, was involved in the decision to terminate Mathur is Mathur's own statement. (Doc. 42 at 4, Exhibit A ¶5). Since one must draw an inference that Mathur is telling the truth, his statement does not constitute direct evidence. Das, 115 F. Supp. 2d at 889. In the present case, since the evidence indicates that Davis did not score the instrument that led to the decision to terminate Mathur, Mathur has not presented direct evidence of discrimination under the standard articulated in Das.

### B. Circumstantial Evidence

In order to state a *prima facie* case where there is no direct evidence of discrimination against an employer under the traditional application of the McDonell Douglas test, a plaintiff

9

must show that he was: (1) a member of a protected class; (2) discharged; (3) qualified for the position; and (4) that a comparable "similarly-situated" non-protected person was treated better. Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir. 1992). Plaintiff argues that the Defendant fails to satisfy the fourth element. Although this factor is critical to the traditional application of McDonnell Douglas analysis, it is not as important in the context of a reduction in force case. Both parties agree that Mathur's separation from the company was the result of a true reduction in force. In the case of an RIF, the Sixth Circuit has explained that "the plaintiff need not show that he was replaced by or treated differently from a similarly situated [] employee." Cichewicz v. UNOVA Indus. Auto Sys., Inc., 92 F. App'x 215, 218 (6th Cir. 2004); Barnes v. GenCorp, Inc., 896 F.2d 1457, 1465 (6th Cir. 1990); Reminder v. Roadway Express, Inc., 215 F. App'x 481, 483 (6th Cir. 2007). Rather, the plaintiff must present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." Geiger v. Tower Auto., 579 F.3d 614, 623 (6th Cir. 2009) quoting Barnes, 896 F.2d at 1465. This heightened standard is necessary in a reduction in force situation because in these instances "the most common legitimate reasons' for the discharge are the work force reductions." Barnes, 896 F.2d at 1465. Therefore, to state a *prima facie* case, at step four, Mathur must provide the Court with evidence that he was singled out because of his race. Id. at 1465-66; Gragg, 373 F.3rd 763, 767-68 (6th Cir., 2004); accord Jones v. Mid-Cumberland Human Resource Agency, No 3:06-0176, 2007 WL 470448 at *4 (M.D. Tenn., Feb. 8, 2007). Defendants do not challenge Plaintiff's ability to show evidence satisfying the first three elements of a *prima facie* case. Rather, they argue that Plaintiff cannot meet the heightened burden at step four requiring additional evidence showing he was singled out for impermissible reasons.

10

A. Retention of Co-Worker Outside Protected Class

As additional evidence, Mathur has contended that he was fired while another Senior Software Developer, Kellner, was retained. Kellner was both younger then Mathur, at age 33, and white. (Doc. 42 at 7). However, this is not, in itself, evidence of discrimination.

Mathur further contends that he was more qualified than Kellner and therefore should have been retained. (Doc. 42 at 6). As evidence of this claim, he presents Kellner's resume alongside his own resume and his transcripts. (Doc. 42, Exhibit B2 at 3-6). This argument is unpersuasive. Under 6th Circuit case law, "a plaintiff's contention that he was better qualified than the workers who were retained is insufficient to establish a *prima facie* case." Mynatt v Lockheed Martin Energy Systems. Inc., 271 Fed.Appx. 470, 477, 2008 WL 74425 (6th Cir. 2008) citing LaGrant v. Gulf & Western Mfg. Co., Inc., 748 F.2d 1087, 1091 (6th Cir. 1984). "Moreover, an employee's evaluation of his own performance or qualifications is irrelevant as a matter of law." Mynatt, 271 Fed.Appx. at 271, quoting Wren v. Gould, 808 F.2d 493, 502 (6th Cir,1987). Therefore, the evidence Mathur provides regarding his qualifications is insufficient to make out a claim under Title VII or the ADEA.

Furthermore, by way of further circumstantial evidence, Mathur argues that he was terminated and Kellner was retained in violation of company's stated rules and policies. (Doc. 7 ¶ 3). Meriam' 2005 salaried employee handbook, upon which Mathur relies, states that "length of service with the company is of prime importance, other factors being equal, in matters concerning your day to day activities, your future employment and your promotional opportunities." (Id; Doc. 40-2 at 39). Mathur argues that he had worked at Meriam three weeks longer then Kellner had. (Doc. 41 at 17).

11

The inference the Court is asked to draw is that the company broke its' own rules order to force out an older, Indian worker and retain a younger, white worker. He argues that this action constitutes sufficient additional evidence of discrimination under the <u>McDonnell Douglas</u> burden-shifting formula. Indeed, the Ninth Circuit has ruled that when an employee is terminated as part of an RIF, with no apparent regard to the employer's stated seniority policy, there is sufficient circumstantial evidence to make a *prima facie* case under the ADEA. <u>Diaz v. Eagle Produce, Ltd. Partnership</u>, 521 F.3rd 1201 (9th Cir. 2008).

However, even if <u>Diaz</u> were binding precedent in the Sixth Circuit, it would not apply in this case. Mathur has simply selected those sections of the Rules and Policies that support his position while ignoring those that do not. In the very same paragraph of the 2005 Employee Handbook that he cites, Meriam's Rules and Policies explicitly states that "seniority can be broken" in the event of a RIF. (Doc. 40-2 at 39). Since a RIF occurred in this case, Meriam did not act in "flagrant violation of its own Rules and Policies." (Doc. 7 ¶ 3). Meriam was under no obligation to give deference to Mathur's seniority during a RIF. Thus, since Meriam did not break its own rule, the inference of discrimination that Mathur asks the Court to draw collapses.

B. Comments Made by Supervisor Davis

The comments allegedly made by Davis may also constitute circumstantial evidence of discrimination. Mathur, for his part, claims that Davis made the decision to terminate his position. (Doc. 42 at 3-4). Meriam claims that Davis had nothing to do with the decision to terminate Mathur. (Doc. 41 at 19, 21). It claims the decision was made by Scott Walker, the Head of the Engineering Department. (Id.)

In Title VII and ADEA claims, under 6th Circuit law, any "statements by non-decision

12

makers, or decision makers unrelated to the decisional process itself cannot suffice to satisfy the plaintiff's burden of demonstrating---animus." Geiger, 579 F.3rd at 621, quoting Bush v. Dictaphone Corp., 161 F.3rd 363, 369 (6th Cir. 1998). Thus, Mathur's *prima facie* case turns on whether or not there is sufficient additional evidence to indicate that 1) it was Davis, not Walker who made the decision to terminate him or 2) that Davis' discriminatory remarks somehow impacted Meriam's decision to terminate Walker.

Mathur does not offer sufficient additional evidence to prove that Davis was in any way involved in his termination. His arguments rely on two allegations. First, he alleges that the Human Resources Manager, Benita DuBrueil told him that Davis made the decision. (Doc. 42 at 4). However, there is no evidence in the record that supports Mathur's claim aside from his own statement. Second, Mathur alleges that if Walker, who was not Mathur's supervisor, terminated him he must have done so based on a recommendation from Davis (Doc. 42 at 3).

Assuming that DuBrueil made the statement, it is not enough to create a genuine issue of material fact. "The existence of a mere scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party." Das, 115 F.Supp. 2d at 889, citing Anderson v. Liberty Lobby, Inc., 477 US at 251, and Copeland, 57 F.3d 476 at 479 (6th Cir.1995). The only evidence in the record that would support Mathur's contention is his own statement. (Doc. 42 at 4, Exhibit A ¶ 5).

The evidence indicates that it was Scott Walker, the head of the engineering department, who made the decision to terminate Mathur. (Doc. 32, Exhibit A at 4; Doc. 41-1 ¶12; Doc. 41-2 ¶3). The most persuasive evidence is an e-mail from Walker with the chart he allegedly prepared assessing Meriam employees, including Mathur and Kellner, for the RIF. (Doc. 32., Exhibit A at 4-

13

5). Furthermore, the person he sent the document to was Benita DuBrueil, Meriam's human resource director, and not Davis. (Id., Exhibit A at 4.) There is no evidence on the record, other than Mathur's allegations, that Davis was in any way involved with the decision to terminate Mathur.

Furthermore, because Walker was not his direct supervisor and because the RIF scores do not align with his performance reviews, Mathur alleges that the scores, if they were prepared by Walker, must have been based on recommendations for Davis. This is pure conjecture on Mathur's part. All Mathur has offered into evidence is a portion of his 2008 performance review where he was ranked higher then Kellner in Communication and Problem Solving. (Doc. 42, Exhibit B1 at 1). He then points out that on the RIF both Kellner and Mathur were given the same rank in those categories. (Doc. 42, Exhibit B1 at 3).

However, there is no evidence Meriam was under any obligation to take any performance review score into account under the RIF criteria. Meriam claims that the RIF scores were based on examining each employee's body of work and looking at the current needs of the company (Doc. 45 at 4). However, even if one assumes that Walker did assign the RIF scores carelessly, this does not prove Mathur's case. Under the Northern District of Ohio's case law, "an employer may make employment decisions 'for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.'" Brown v. Renter's Choice, Inc., 55 F. Supp.2d 788, 795 (N.D. Ohio 1999), quoting Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984).

No evidence in this case shows that Walker had any discriminatory motive for the rankings he assigned Kellner and Mathur. It is not enough to simply assert that Walker was not Mathur's

14

direct supervisor and did not base his RIF rankings on the most recent performance review. At worst, this evidence could only support an inference that Walker made the wrong decision, one supported by inadequate evidence, when he terminated Mathur. Without more, that inference is not enough to show any act of discrimination on Walker's part or that he was acting based on a recommendation from Davis. Thus, neither the discrepancies between Mathur's performance reviews and his RIF scores nor the fact that Walker did not directly supervise Mathur constitute additional evidence of discrimination under Title VII and ADEA.

### C. The Staub Case

The sole bit of case law case law that Mathur relies on in his argument is <u>Staub v. Proctor Hospital</u>, 131 S.Ct. 1186, 2011 WL 691244 (March 1, 2011). His argument is that, under this case, "discriminatory animus can be inferred upward where it had the effect of coloring the adverse employment action." (Doc. 42 at 3).

However, <u>Staub</u> is distinguishable in two ways. First, it involved neither a Title VII nor an ADEA claim. It was instead brought under the Uniform Service Employment and Redeployment Rights Act (USERRA). <u>Staub</u>, 131 S.Ct. 1186. Thus, its precedential value in Title VII and ADEA claims is dubious. Furthermore, in <u>Staub</u>, there was evidence that the actions of company agents, including the Plaintiff's supervisor, influenced the ultimate decision to terminate the plaintiff's employment. <u>Id</u>. In this case, there is no evidence that Davis, Mathur's direct supervisor, consulted with Walker, who made the decision to terminate Mathur. Furthermore, even if Walker consulted the performance reviews made by Davis in making his decision, Mathur does not contend that these reviews were in any way inaccurate. Indeed, he relies on them as evidence in his Reply in Opposition to the Motion for Summary Judgment. (Doc. 42, Exhibit B1 at 1-2).

As a result, Mathur has pointed to no basis in the facts for a legal presumption that Davis, who allegedly made the discriminatory comments, was involved in making the decision to terminate Mathur. Mathur has failed to provide any other "direct, circumstantial or statistical evidence of discrimination" necessary to make a *prima facie* case for Title VII or ADEA discrimination. Geiger, 579 at 623, quoting Barnes., 896 at 1465.

## **CONCLUSION**

Mathur is unable to make a *prima facie* case for wrongful termination under the ADEA or Title VII. Mathur has not shown that there is a genuine issue of material fact and the Defendant is entitled to judgment as a matter of law. Therefore, the Court recommends that the Defendant's motion for summary judgment should be granted.

RECOMMENDATION
It is recommended that the motion for summary judgment be granted.

Dated:   March 6, 2012           /s/ Kenneth S. McHargh
                                 Kenneth S. McHargh
                                 United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).